**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 93-8152

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SANTOS LIMONES and JUAN ANTONIO FUENTES,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Texas

(November 29, 1993)

Before REYNALDO G. GARZA, KING and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Santos Limones and Juan Antonio Fuentes appeal their convictions for conspiracy to possess cocaine and possession of cocaine with intent to distribute. Finding no error, we AFFIRM.

I. FACTS

On November 1, 1990, Armando Ramirez, an agent of the Drug

Enforcement Administration, received a phone call from Francisco "Pancho" Rodriguez Hernandez ("Rodriguez"). Rodriguez called to provide information about a load of cocaine being transported in a pickup truck in Eagle Pass, Texas. Acting on that information, government agents found a load of cocaine in Eagle Pass the next day. Based on their investigation, agents concluded that Rodriguez had removed some of the cocaine from the pickup truck before reporting the load to Agent Ramirez.

Ricardo Almeda-Alvarado ("Almeda"), a convicted drug dealer, testified for the Government pursuant to a plea bargain agreement. Almeda admitted that he would receive a more lenient sentence as part of his plea bargain agreement. Almeda testified that Rodriguez sent him some cocaine to sell on November 1 or 2. Almeda took this cocaine to Ft. Worth after a buyer was found for the cocaine by Juan Antonio Fuentes ("Fuentes"). Almeda also testified that they were going to sell the cocaine for $18,000 a kilo and that Fuentes was going to receive $1,000 a kilo for "this deal." Almeda further testified that Santos Limones ("Limones") helped transport the cocaine to Ft. Worth. Almeda claimed that Limones helped him transport cocaine to Ft. Worth on two different occasions, making two trips on each occasion.

Almeda testified that Limones drove a station wagon with the cocaine hidden in the sides of the vehicle. Almeda and Fuentes drove in a separate "lead car". The lead car was driven by Almeda and Fuentes was the passenger. When the three men arrived in Ft. Worth, Almeda phoned the purchaser of the cocaine, Jaime Garcia

2

("Garcia"). After Garcia arrived, he and Fuentes left in a car with the cocaine and Almeda and Limones stayed behind. Fuentes and Garcia returned more than an hour later with the proceeds from the sale of the cocaine. Almeda, Limones and Fuentes went back to Del Rio that night and they returned to Ft. Worth a few days later with another load of cocaine.

## II. PROCEDURAL HISTORY

Limones and Fuentes were charged in a two-count indictment with conspiracy to possess more than five kilograms of cocaine in violation of 21 U.S.C. sections 841(a)(1) and 846 (count one), and with possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. section 841(a)(1) (count two). The case went to trial on December 14, 1992 before Judge Prado of the Western District of Texas, and on December 18, 1992 the jury convicted Limones and Fuentes on both counts. On February 1, 1993 Limones was sentenced to 210 months imprisonment on counts one and two, to run concurrently, and to a five-year term of supervised release. Limones was also ordered to pay $100 in special assessments. Fuentes was sentenced to 188 months of imprisonment on counts one and two, to run concurrently, and to a five year term of supervised release. Fuentes was also assessed $100. Limones and Fuentes ("appellants") timely appealed to this court.

## III. ANALYSIS

The appellants' claim the district court erred in: (1) refusing to grant a mistrial on four separate occasions; and (2)

3

admitting irrelevant and prejudicial hearsay evidence. Fuentes, alone, claims the district court erred in finding sufficient evidence to uphold his conviction, and that a fatal variance exists between the Government's proof and the indictment.

We find that the district court did not err in: (1) refusing to grant the appellants' motions for mistrial; and (2) finding sufficient evidence to uphold Fuentes' conviction. Although the district court erred in admitting irrelevant and prejudicial evidence, this was harmless error. Finally, a fatal variance does not exist between the Government's proof and the indictment.

A.  Motions for mistrial

The appellants argue that the district court erred in refusing to grant a mistrial on four separate occasions. They claim the first error concerned testimony regarding the death of Rodriguez. The appellants assert that Limones moved in his Motion in Limine C to preclude the government from alluding in any manner before the jury to the nature and cause of Rodriguez's death.[1] The appellants argue that although the Government did not elicit the testimony, its witness, Almeda gave a "nonresponsive answer" to a question that so tainted the minds of the jurors that a mistrial should have been granted.[2]  Also, during the testimony of Agent Delfino

_____

[1]  The district court granted the motion, noting that it would rule on the admissibility of the evidence concerning Rodriguez's murder when the Government intended to introduce the evidence.

[2]  The testimony in question is the following:

PROSECUTOR:  I'm--I forgot to ask you this one question. Mr. Almeda.  At the time that you were meeting with Miguel from

4

Sanchez, Jr., tapes of his conversation with Almeda were introduced into evidence. These tapes again referred to Rodriguez's murder.

The appellants assert that a second motion for mistrial was requested when the Government asked Almeda if he had any concern for his safety or the safety of his family for having taken the stand. Almeda answered affirmatively. The appellants argue that the Government elicited this testimony in bad faith, because it could not prove that any threats had been made. The appellants argue that even though the district court instructed the jury to disregard the question and the answer, no instruction could cure the prejudicial effect upon the jury.

Limones alone moved for a mistrial when Deputy Marshal James Lee stated that Almeda had been dealing drugs for "several years . . . he's been in the business about as long as Mr. Limones has." Limones acknowledges that the district court properly instructed the jury to disregard the testimony. However, Limones argues that the district court's instruction could not remedy the prejudicial effect because the extrinsic-offense testimony closely resembled his charged offense. United States v. Beechum, 582 F.2d 898, 914 (5th Cir. 1986)(en banc), cert. denied, 440 U.S. 920 (1979). Limones further argues that the evidence of the uncharged drug dealing had a significant probability of substantially affecting

---

Houston, did you at any time introduce[] [sic] Santos Limones to that officer?

ALMEDA: I didn't introduce him to him. I just--these people were coming to verify if I had-- be Mr. Francisco Rodriguez, and--because they told me they had killed him, Mr.-- whatever Miguel was supposed to be giving--Francisco the cocaine.

5

the jury's verdict. United States v. Kimble, 719 F.2d 1253, 1257 (5th Cir. 1983), cert. denied, 464 U.S. 1073 (1984).

The appellants' final motion for mistrial concerned the testimony of several government witnesses who testified as to the alleged coconspirator statements introduced into evidence prior to the district court's mandatory "threshold" finding that a conspiracy did in fact exist. The Appellants argue that the district court erroneously ruled that the evidence presented by the Government gave the court sufficient reason to find a conspiracy.

The appellants argue that the cumulative error during this trial so tainted the proceedings that the jury was unlikely able to erase the prejudicial effect from their minds. United States v. Escamilla 666 F.2d 126, 128 (5th Cir. 1982).

This court will reverse a district court's refusal to grant a mistrial only for an abuse of discretion. United States v. Baresh. 790 F.2d 392, 402 (5th Cir. 1986). Furthermore, where a motion for mistrial involves the presentation of prejudicial testimony before the jury, a new trial is required only if there is a "significant possibility" that the prejudicial evidence had a "substantial impact" upon the jury verdict, viewed in light of the entire record. United States v. Escamilla, 666 F.2d 126, 128 (5th Cir. 1982).

With regard to the appellants' first motion for mistrial, the Government points out that Almeda's testimony concerning Rodriguez's death was unresponsive to the question asked. In contrast to Escamilla, where the testimony in question was the only

6

evidence establishing the defendant's guilt, the evidence of Rodriguez's murder did not contribute to the appellants' drug convictions. Id. Moreover, the district court asked the appellants if they wanted a curative instruction for the tape recorded conversations concerning Rodriguez's murder and the appellants declined the instruction.

Pertaining to the appellants' second and third motions for mistrial, the district court instructed the jury to disregard Almeda's testimony regarding his concern for his safety and that of his family, and U.S. Deputy Marshal Lee's characterization of Limones as a long time drug dealer. This court has declined to reverse a district court's refusal to grant a mistrial when the district court has immediately instructed the jury to disregard the evidence of extrinsic offenses or other wrongs. See, United States v. Walker, 621 F.2d 163 (5th Cir.), cert. denied, 450 U.S. 1000 (1980).

Finally, addressing appellants' argument that the coconspirator statements were not made in the course of and furtherance of a conspiracy, the term "in furtherance" of a conspiracy is broadly construed and clearly encompasses the testimony contained in the taped conversation between Almeda and Sanchez. See, United States v. Johnson, 872 F.2d 612, 623 (5th cir. 1989). Furthermore, the district court expressly held that the requirements for the admission of coconspirator statements had been met. United States v. Fragoso, 978 F.2d 896, 899 (5th Cir. 1992).

The significant evidence of the appellants' guilt renders it

unlikely that any or all of the testimony complained of had a substantial impact on the jury's verdict. United States v. Rodriguez Arevalo, 734 F.2d 612, 615 (11th Cir. 1984). Therefore, the district court did not abuse its discretion in refusing to grant the appellants' motions for mistrial.

B.   Evidentiary rulings

Limones argues that the district court erred in admitting evidence that Rodriguez had been murdered by drug-dealing confederates. Limones argues that this evidence was irrelevant and extremely prejudicial hearsay because the jury could easily have inferred that he was involved with the murder.

In reviewing a district court's evidentiary rulings, this court will reverse only for an abuse of discretion. United States v. Anderson, 933 F.2d 1261, 1267-68 (5th Cir. 1991). The district court erred in admitting irrelevant and prejudicial evidence of Rodriguez's murder. Thus we must determine whether this was harmless error. FED. R. CRIM. P. 52(a). In view of other overwhelming evidence of the appellants' guilt, as discussed in the sufficiency of the evidence section, and the unlikelihood that the prejudicial evidence had a substantial influence on the outcome of the trial, we find that the district court's error was harmless. United States v. Poitier, 623 F.2d 1017, 1021 (Fifth Cir. 1980).


C.   Sufficiency of the evidence

Fuentes argues that the Government failed to prove each and every element of the offenses charged in the indictment. Fuentes

8

argues that this court will reverse a conviction when the evidence is so weak or so contrary to guilt that it would compel a jury to entertain a reasonable doubt of the defendant's guilt. United States v. Del Aguila-Reyes, 722 F.2d 155, 157 (5th Cir. 1983).

Fuentes argues that after the conclusion of the Government's case there was clearly insufficient evidence to find him guilty. Fuentes argues that the only evidence that proves that he was involved in a conspiracy to possess cocaine is the uncorroborated testimony of coconspirator Almeda, a known drug dealer, and an address book seized from defendant Alberto Trevino Alderete's[3] house which had Fuentes' name on it, and Fuentes' business card. Fuentes also argues that Almeda's testimony is incredible or otherwise insubstantial on its face. United States v. Osum, 943 F.2d 1394, 1405 (5th Cir. 1991).

Fuentes further argues that the Government failed to show direct or circumstantial evidence that he was a willing and knowing participant in the possession of cocaine. Fuentes argues that the fact that Limones was in possession of the vehicle with the cocaine, while he was a passenger in the lead car is insufficient by itself to sustain a conviction against him for the conspiracy to possess with intent to distribute cocaine, or for possession of cocaine. United States v. Ascarrunz, 838 F.2d 759 (5th Cir. 1988).

In reviewing challenges to the sufficiency of the evidence, this court must determine whether a rational trier of fact could

_____

[3] Trevino Alderete was originally charged with Fuentes and Limones, however, after the trial began, he changed his plea to guilty.

9

have found that the evidence established guilt beyond a reasonable doubt. United States v. Carrasco, 830 F.2d 41, 43 ((5th Cir. 1987). In making this determination, this court considers the direct and circumstantial evidence in a light most favorable to the government, and accepts all reasonable inferences which tend to support the jury's verdict. Id. at 43-44. To establish the offense of a drug conspiracy, the Government must prove beyond a reasonable doubt that a conspiracy existed, that the accused knew of the conspiracy, and that he voluntarily joined it. United States v. Rodriquez-Mireles, 896 F.2d 890, 892 (5th Cir. 1990). To establish the offense of possession of a controlled substance with intent to distribute, the government must prove knowing possession of the contraband with intent to distribute. United States v. Romero-Reyna, 867 F.2d 834, 836 (5th Cir. 1989).

Fuentes' argument is basically that the evidence is insufficient because Almeda's testimony should not have been believed. The fact that Almeda is a known drug dealer, however, goes to the weight rather than the sufficiency of the evidence. See, United States v.Greenwood, 974 F.2d 1449, 1458 (5th Cir. 1992), cert. denied sub nom., ___U.S.___, 113 S.Ct. 2354 (1993).

Evidence at trial established that Fuentes was directly involved in the plan to transport the cocaine to Ft. Worth. The evidence also established that Fuentes found a buyer for the cocaine. Specifically, on November 1, Fuentes called his buyer and told him that "we [are] going over to Ft. Worth and take [sic] some cocaine and sell it over there." Upon Limones, Almeda and Fuentes'

10

arrival in Ft. Worth, Fuentes called Garcia, the buyer of the cocaine. Subsequent to this phone call, Limones, Almeda and Fuentes met with Garcia at the J&J Auto Clinic. When they first arrived at the Auto Clinic, Garcia was already there and Fuentes was the first one to talk to Garcia. Garcia and Fuentes left in a car with the cocaine while Almeda and Limones stayed behind. They returned more than an hour later with the proceeds from the sale of the cocaine. It was further established that Fuentes was going to receive $1,000 for "this deal."

Contrary to Fuentes' argument, evidence corroborating Almeda's testimony was introduced at trial. Employees from the Ft. Worth Holiday Inn and Motel 6, testified that Garcia rented a room at the Holiday Inn on or near the day in question and that Almeda rented a room at the Motel 6 on November 13 and 17, and December 12, 1990. Telephone bills and an address book containing Fuentes' name and phone number, and Fuentes' business card further corroborate Almeda's testimony.

Therefore, sufficient evidence exists to uphold Fuentes' conviction on both counts.

D. <u>Variance between the Government's proof and the indictment</u>

Fuentes argues that a fatal variance exists between the indictment which charged "multiple conspiracies" and any actual proof of his involvement. Fuentes argues that at issue in his case was the sale of approximately 49 kilograms of cocaine in Ft. Worth. Fuentes argues that the testimony of 96 kilograms of cocaine seized in Eagle Pass, Texas and the 539 kilograms discovered in Normandy

11

and Del Rio, Texas were evidence of "independent activities" which should not have been introduced into evidence. According to Fuentes, most of the evidence elicited at trial dealt with two other discrete conspiracies. Fuentes argues that although there may have been some evidence of his involvement with the Ft. Worth venture, there was no evidence linking him to the Eagle Pass or Del Rio ventures.

"We have held that a variance between the offense charged in the indictment and the proof relied upon at trial constitutes reversible error if it affects the substantial rights of the defendant." United States v. Hernandez, 962 F.2d 1152, 1158 (5th Cir. 1992), cert. denied, ___U.S.___, 113 S.Ct. 2429 (1993). Furthermore, "[w]e have long held that when the indictment alleges the conspiracy count as a single conspiracy, but the `government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights.'" United States v. Jackson, 978 F.2d 903 (5th Cir. 1992) (citing, United States v. Richerson, 833 F.2d 1147, 1155 (5th Cir. 1987)). At the very least, the Government established that Fuentes was involved in the Ft. Worth conspiracy. Therefore, the district court correctly held that Fuentes' substantial rights were not affected.

## IV. CONCLUSION

For the reasons stated above, Limones and Fuentes' convictions are AFFIRMED.

12