**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 98-31091**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**GORDON JACKSON,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court
for the Eastern District of Louisiana
(97-CR-141-ALL)**

_____

August 17, 1999

Before KING, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Convicted for a cocaine trafficking conspiracy, Gordon Jackson challenges not receiving an evidentiary hearing on his suppression motion concerning telephone conversations recorded pursuant to an authorized wiretap, an FBI Agent's expert testimony about drug transaction ledgers, and the denial of a mistrial following testimony that Jackson had previously been incarcerated. We **AFFIRM**.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

While investigating drug dealer Richard Peña, the Government became interested in the activities of Mitcher Hardin, suspected of being a close associate of Peña and the head of a drug-distribution group. In February and October 1996, a magistrate judge approved the use of pen registers on telephones located at Hardin's business and home.

In January 1997, after gathering information from the pen registers and confidential informants, the Government was authorized to wiretap Hardin's home and business telephones. And, that March, the Government was authorized to intercept his cellular telephone conversations. Surveillance of Hardin's telephones ended that April.

As a result of the evidence gathered in the investigation, including that derived from the wiretaps, Jackson and eight others, including Hardin, were charged with conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. By January 1998, all of the defendants, except Jackson, had entered into plea agreements. That March, Jackson's trial ended in a mistrial because the jury was unable to reach a verdict.

At a second trial held that June, the Government claimed that the defendants were involved in a drug distribution organization headed by Hardin. Through the testimony of several of Jackson's co-defendants, the Government maintained that Jackson distributed cocaine received from Hardin. The Government played five taped telephone conversations, linking Jackson to the drug conspiracy. Jackson presented no evidence.

The jury found Jackson guilty. Because he had two prior felony drug convictions, he was sentenced to life imprisonment.

## II.

### A.

Pre-trial, Jackson and Hardin (the latter entered a plea agreement several months later) moved jointly to suppress all evidence obtained as a result of the wiretaps. After determining that an evidentiary hearing was *not* necessary, the district court denied the motion. We review *de novo* the denial of a suppression motion without an evidentiary hearing. *United States v. Dickey*, 102 F.3d 157, 162 (5th Cir. 1996).

A wiretap authorization order must be supported by a finding of probable cause. *United States v. Collins*, 972 F.2d 1385, 1409 (5th Cir. 1992). "In order to obtain a hearing on allegedly deliberate falsehoods contained in a wiretap application, the

defendant is required to make a substantial preliminary showing that the application contains a false statement made knowingly or intentionally, or with reckless disregard for the truth, and that the statement is necessary for a finding of probable cause." *Id.* at 1410 (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

Jackson contends that an evidentiary hearing should have been held regarding his claims that the first affidavit supporting the Government's wiretap application (10 January 1997) contained false averments. He maintains that, if given the opportunity to present evidence, he could prove that a number of the calls listed on the pen register as being allegedly made to criminals were actually innocent calls to entirely different people, and that the Government did not have probable cause to intercept the non-Peña calls.

The district court applied *Franks*, and examined whether, when the material about which Jackson complained was "set to one side, there remain[ed] sufficient content in the ... affidavit to support a finding of probable cause". *Franks*, 438 U.S. at 171-72; *see also* *United States v. Guerra-Marez*, 928 F.2d 665, 670 (5th Cir. 1991). It ruled that, even assuming the falsity of the challenged material, "probable cause for the wiretaps would be provided by the informants' information regarding Hardin's history of drug dealing

- 4 -

and his relationship with Peña, and the hundreds of calls to Peña from Hardin's telephones".

We agree. Even excluding the challenged material, there is sufficient evidence to establish probable cause. In addition to the pen register showing nearly 200 calls to Peña from Hardin's telephones, there was other information, regarding both Peña and Hardin's involvement in drug trafficking and their use of telephones to facilitate it, collected as a result of investigations by federal and local authorities.

Next, Jackson claims that a confidential informant, referred to in the January 1997 affidavit as "CS 1", who gave information regarding Roderick Smith (a drug distributor for Hardin), was Smith himself. Jackson maintains that it was a material misrepresentation for the affidavit not to state that Smith, who had been killed in May 1996, was the source of the information about himself.

In rejecting this claim, the district court concluded that, even if "CS 1" was Smith, such a representation was *not* false but merely misleading, and *not* meant to misrepresent the facts. The district court found the situation similar to that in *United States v. Hyde*, 574 F.2d 856, 866 (5th Cir. 1978), in which our court stated:

> [T]he statements were not made with an intent to deceive the magistrate [judge]. ... The extreme sanction of invalidating a wiretap order is applied to intentional misrepresentations by the government when the statements are made with an intent to circumvent regular Constitutional safeguards and corrupt the administration of justice. The statements made here were not misrepresentations ...; they were not intended to deceive the magistrate [judge] and vitiate Constitutionally mandated procedures.

We agree. Jackson does not show that the Government made a misrepresentation with the intent to deceive. Further, as the Government notes, the affidavit does not state that "CS 1" provided any information after May 1996, when Smith was killed. Finally, the affidavit notes that the information provided by "CS 1" was verified by the investigations of the law enforcement agencies involved in this case.

## B.

Jackson asserts that an FBI Agent should not have been allowed to testify as an expert on drug transaction ledgers. At trial, the Government introduced several composition notebooks belonging to Hardin that contained notations and numbers. The Government maintained that the references to "Ray" referred to Jackson, whose middle name is "Ray". The Agent testified that, in his opinion, the notebooks contained drug transaction ledgers.

- 6 -

The Agent testified about his experience in performing drug investigations and his law enforcement training in that respect, after which the Government tendered him as an expert witness. Following cross examination of the Agent's qualifications, Jackson objected to the Agent being permitted to so testify, on the ground that he lacked scientific knowledge. The objection was overruled.

Federal Rule of Evidence 702 permits testimony by those qualified in "scientific, technical, *or other specialized knowledge*" to render opinions if it "will assist the trier of fact to understand the evidence or determine a fact in issue". (Emphasis added.) "The admissibility of expert testimony rests within the sound discretion of the district court and will be reversed only upon a clear showing of abuse of discretion." **United States v. Garcia**, 86 F.3d 394, 400 (5th Cir. 1996), *cert. denied*, 519 U.S. 1083 (1997) (quoting **United States v. Townsend**, 31 F.3d 262, 270 (5th Cir. 1994)).

Maintaining that the Agent was not qualified to testify as an expert on the grounds that he did not possess any specialized knowledge and experience or have legitimate special expertise because his conclusions could not be made with scientific certainty, Jackson's primary complaint is that the Agent's knowledge was not "scientific". However, as noted, Rule 702

permits testimony regarding "specialized knowledge". Accordingly, "[t]he rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence". *United States v. Buchanan*, 70 F.3d 818, 832 (5th Cir. 1996) (quoting *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995)); *see also United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997); *Garcia*, 86 F.3d at 400.

The Agent's testimony was helpful in assisting the jury to understand the notebooks/drug transaction ledgers. It is unlikely that, without it, the average juror would have known the meaning of seemingly innocuous names and numbers. *See Griffith*, 118 F.3d at 321 (expert testimony properly admitted to explain meaning of jargon used by drug traffickers); *Garcia*, 86 F.3d at 400 (expert testimony that large drug trafficking organization controlled the cocaine was helpful because average jury may not know characteristics of such an organization); *cf. United States v. Alfonso*, 552 F.2d 605, 618 (5th Cir. 1977) (expert testimony regarding meaning of jargon used in gambling operations properly admitted).

And, the Agent's extensive training and experience in drug investigations, which enabled him to testify as an expert in 93

previous cases, establish that he is qualified to testify as an expert in this specialized area. *See* **Buchanan**, 70 F.3d at 832 (narcotics agents qualified to testify as experts in methods of drug dealers where "officers were experienced in investigating narcotics trafficking and drug-related crimes" and "were familiar with certain conduct and methods of operation unique to the drug distribution business").

Because the Agent testified regarding an area of specialized knowledge that was helpful to the jury in determining an issue of fact, and because he was qualified to do so, the admission of such testimony was not an abuse of discretion.

### C.

Finally, Jackson contends that the district court erred in denying a mistrial. Pre-trial, the Government gave notice of intent to introduce evidence of Jackson's past crimes. The district court sustained Jackson's objection to such evidence.

Johnny Odoms, a childhood acquaintance of Jackson who shared a jail cell with him, testified for the Government at the second trial. The following exchange occurred during his direct examination:

> [Government]: The best you can recall, I would like you to tell the jury what Gordon Ray Jackson told you about his involvement with the Mitch Hardin organization.

> [Odoms]: Just that *he had gotten out of a state prison or something like that*, and he met up with Mitch and Keith, and he was just getting back on his feet. And then he was now, this meaning the new case, [sic] the federal case.

(Emphasis added.)

After the Government asked two more questions and tendered the witness, Jackson's counsel (bench conference) moved for a mistrial, asserting that the reference to Jackson's incarceration in state prison precluded his receiving a fair trial. After the court denied the motion, Jackson refused the court's offer to give a cautionary instruction.

The failure to grant a mistrial based on the admission of prejudicial evidence is reviewed for an abuse of discretion. *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 271, 2379 (1999). "Furthermore, where a motion for mistrial involves the presentation of prejudicial testimony before the jury, a new trial is required only if there is a 'significant possibility' that the prejudicial evidence had a 'substantial impact' upon the jury verdict, viewed in light of the entire record." *United States v. Limones*, 8 F.3d 1004, 1007-08 (5th Cir. 1993) (quoting *United States v. Escamilla*, 666 F.2d 126, 128 (5th Cir. 1982)).

It is quite doubtful that Odoms' statement, viewed in the light of the other evidence, had an impact on the verdict. First,

the statement was an unresponsive stray remark and was not highlighted by further questioning.  Also, Jackson declined the curative instruction offer.  *See* **Limones**, 8 F.3d at 1008 (affirming denial of mistrial where prejudicial testimony was unresponsive to question asked and curative instruction offer refused); *see also* **United States v. Nguyen**, 28 F.3d 477, 483 (5th Cir. 1994) ("[a] prejudicial remark may be rendered harmless by curative instructions").

Further, in the light of the other evidence, the statement, even if prejudicial, was harmless.  *See* **United States v. Sotelo**, 97 F.3d 782, 798 (5th Cir. 1996) (any error in denying mistrial after witness made hearsay statement was harmless because defendant did not "establish[] that the comment was prejudicial" and evidence of defendant's guilt was "so overwhelming"); *see also* **United States v. Rodriguez**, 43 F.3d 117, 123 (5th Cir. 1995) ("under the harmless error doctrine, we examine whether the improper comment had a significant impact on the jury").

For example, an FBI Agent testified that an automobile linked to Jackson was observed in the parking lot of a building at which Hardin's drug organization was meeting, and that 48 telephone calls were placed to Jackson from Hardin's telephones during the wiretap period.  As other examples, four co-defendants testified that Jackson was present at a meeting held by Hardin to discuss the drug operation; that Jackson was present when three men, suspected of

stealing money from his residence, were assaulted at Hardin's direction; and that Jackson was involved in the distribution of cocaine.

Finally, and obviously, we must give "considerable weight to the trial judge's assessment of the prejudicial effect of the remark". *Nguyen*, 28 F.3d at 483. The district judge stated:

> In the first place, I don't think [Odom's statement] amounted to anything. I didn't catch it at the time, and I don't think the jury did. But you have your choice. I will give a cautionary instruction which you can prepare which you might want to include at the time when I instruct the jury, or you might want to include it now. If I give a cautionary instruction, you have to decide. It might give more importance to it than necessary.

Needless to say, the district judge felt that any prejudice was minimal, at most.

Thus, because there is not a significant possibility that the statement impacted the jury's verdict in the light of the other evidence, and because the district judge did not view the statement as having created prejudice, the mistrial denial was not an abuse of discretion.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

- 12 -