# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 13, 2020

Lyle W. Cayce
Clerk

No. 19-60561
Summary Calendar

FREDERICK B. WRIGHT,

      Petitioner,

v.

ADMINISTRATIVE REVIEW BOARD, UNITED STATES DEPARTMENT
OF LABOR,

      Respondent.

---

On Petition for Review of a Final Decision and Order
of the United States Department of Labor's Administrative Review Board

---

Before OWEN, Chief Judge, and SOUTHWICK and WILLETT, Circuit Judges.

PER CURIAM:*

      Frederick Wright sued his former employer, the Railroad Commission of Texas (RRC), alleging that his employment was terminated in retaliation for engaging in protected activity under the Federal Water Pollution Control Act[1] (FWPCA) and the Safe Drinking Water Act[2] (SDWA). After a hearing and an

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 33 U.S.C. § 1367.
[2] 42 U.S.C. § 300j-9(i).

initial rejection of those claims that was vacated on appeal, an administrative law judge (ALJ) at the Department of Labor again rejected Wright's claims, and the Administrative Review Board (ARB) upheld that rejection. We affirm.

**I**

The RRC is responsible for regulating the oil and gas industry in Texas.[3] Part of the RRC's responsibility includes overseeing underground injection programs under the SDWA.[4] The RRC is also the state agency that certifies federal permits under the FWPCA.[5]

In October 2007, the RRC hired Wright as an engineer specialist who handled field operations in the oil and gas sector.[6] Wright's job included "conducting surveys, making inspections, investigating complaints, and collecting and analyzing engineering data."[7] Wright's primary duty was to work with oil and gas operators to ensure compliance with state and federal rules, statutes, and regulations.[8]

During Wright's tenure with the RRC, there were numerous complaints about Wright's behavior from colleagues and from oil and gas operators.[9] Wright received several employee evaluations and participated in counselling sessions urging him to improve his behavior,[10] but he did not do so.[11] In one instance, a witness said that an operator asked Wright how he could bring several wells into compliance with state and federal rules.[12] Wright laughed

---

[3] EN.250.
[4] EN.250.
[5] EN.250.
[6] EN.250; CX-52.
[7] EN.250.
[8] EN.743.
[9] EN.250-55.
[10] EN.250-55.
[11] EN.250-55.
[12] EN.250-55.

at the operator and threatened to cite the operator for further violations.[13] In another instance, a witness testified that operators complained that Wright had engaged in name-calling, including calling an operator "stupid."[14] Colleagues complained that Wright was arrogant, rude, and insulting.[15]

Wright frequently ignored his manager's instructions.[16] For instance, near the end of his employment with the RRC, Wright's manager had approved a new form for operators to complete in conducting compliance reviews.[17] An operator submitted this new form to the RRC, but Wright requested that the operator complete the old form.[18] Wright made this request despite the fact that his manager had told him that a phone call about the missing information from the already-completed form would suffice.[19] When this operator complained to Wright's manager, the manager reiterated his request for Wright simply to ask for the new information by phone.[20] Wright continued to disagree with his manager over the use of the new form. This disagreement led to disciplinary recommendations, which resulted in the termination of Wright's employment with the RRC.[21]

According to Wright, the RRC retaliated against him for trying to enforce federal laws protecting safe drinking water.[22] During his employment, Wright had submitted a complaint for a hostile work environment, alleging that his managers and colleagues did not understand the state and federal rules they

---

[13] EN.260, 270, 785.
[14] EN.157, 258.
[15] RX-14, 17; Tr. 338-40, 465-66, 469-70, 476-77.
[16] EN.250-55.
[17] EN.254-55.
[18] EN.255.
[19] EN.255.
[20] Dep't of Labor's Br. at 14.
[21] EN.254-56.
[22] *See* Wright's Br. at 18-19.

were charged with enforcing and often disregarded them.[23] Wright also argued for the use of the old compliance review form, contending that it would improve enforcement of federal and state laws and would better inform the public about wells.[24]

After Wright's employment with the RRC was terminated, Wright asked the Occupational Safety and Health Administration (OSHA) to investigate whether his termination was because he had engaged in protected activity under the SDWA and FWPCA.[25] OSHA concluded that "it had no cause to believe" that the RRC had violated either the SDWA or FWPCA by retaliating against Wright for protected activity.[26] Wright appealed OSHA's decision to an ALJ at the Department of Labor.[27] The ALJ concluded that Wright had not engaged in protected activity.[28] Wright appealed to the ARB, which vacated the ALJ's decision, ordered that one of Wright's exhibits be admitted into evidence, clarified the law regarding protected activity, and remanded the decision to the ALJ for further proceedings.[29] The ALJ again rejected Wright's claims, concluding in part that any protected activity he engaged in was not a motivating factor for his termination from the RRC's employment.[30] The ARB affirmed the ALJ's decision.[31] This appeal followed.

## II

Wright's first argument on appeal is that the ALJ abused his discretion by not admitting several of Wright's exhibits which, he argues, would have "presented evidence that the negative comments in [the RRC's employee

---

[23] EN.576-80; CX 56-60; Dep't of Labor's Br. at 19-20.
[24] *See* Wright's Br. at 18-19.
[25] EN.121.
[26] EN.121.
[27] EN.121.
[28] EN.142.
[29] EN.183, 376.
[30] EN.376.
[31] EN.379.

performance evaluation] were retaliation for protected activity."[32]     We generally review evidentiary rulings for abuse of discretion.[33]     In an evidentiary ruling, an abuse of discretion occurs "only where the challenged ruling affects a substantial right of a party."[34]

Wright's contention that the ALJ abused his discretion in not admitting several exhibits is unavailing.  Wright fails to show how any of the rejected exhibits, if admitted, might have "had a substantial influence on the outcome of the" proceedings and thus affected a substantial right of his.[35]  Several of the rejected exhibits would have been cumulative as they were identical to other admitted exhibits.[36]  Other exhibits, although not identical, would have also been cumulative because of their similarity to testimony from the hearing.  For instance, several of the rejected exhibits are requests for admission from state court,[37] which are remarkably similar to testimony at the ALJ's hearing.[38]  Still other exhibits, such as email correspondence about the Texas Legislature's renumbering of all engineering specialist jobs at the RRC, are not relevant to whether Wright's supervisors retaliated against him for engaging in protected activity under the SDWA, FWPCA, and related regulations.[39]  Therefore, Wright has failed to show that the ALJ abused his discretion in denying these exhibits.

---

[32] Wright's Br. at 38.

[33] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997).

[34] *Jones v. Benefit Trust Life Ins. Co.*, 800 F.2d 1397, 1400 (5th Cir. 1983) (first citing *Muzyka v. Remington Arms Co.*, 774 F.2d 1309, 1313 (5th Cir. 1985); and then citing *Jon-T Chems., Inc. v. Freeport Chem. Co.*, 704 F.2d 1412, 1417 (5th Cir. 1983)); *see also* FED. R. EVID. 103(a).

[35] *See United States v. Limones*, 8 F.3d 1004, 1008 (5th Cir. 1993).

[36] *See, e.g.*, Wright's Br. at 36 ("Judge Kennington rejected this exhibit as irrelevant despite the fact that he admitted this exact same exhibit as one of Respondent's exhibits.").

[37] *See* Wright's Br. at 38-39.

[38] *Compare* EN.457 (discussing a 10-day delay) *with* EN.395 (discussing the same 10-day delay).

[39] *See* CX-224-25.

Wright similarly contends that the ALJ abused his discretion by not allowing him to "elicit testimony about the [e]xhibit that the ALJ was required to admit . . . on remand" from the ARB.[40]   But Wright has likewise failed to show how this "had a substantial influence on the outcome of the" proceedings and thus affected a substantial right of his.[41]   He simply makes conclusory statements that not allowing him to elicit testimony on this exhibit was prejudicial.[42]   Wright has failed to show the ALJ abused his discretion in not allowing him to elicit testimony on this exhibit.

## III

Wright's second argument on appeal is that the ALJ's decision relied on inadmissible hearsay evidence.[43]   Specifically, Wright contends that witnesses' testimony recounting complaints from former colleagues and oil and gas well operators is inadmissible hearsay.[44]   Wright's argument is unpersuasive. Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted."[45]   Generally, "a statement is not hearsay if it is offered to prove the statement's effect on the listener."[46]

Here, the witnesses did not offer their statements to prove the truth of the complaints from former colleagues and oil and gas well operators.   Rather, the witnesses' provided these to statements show why they believed Wright was acting unprofessionally and why they recommended that the RRC terminate Wright's employment.[47]   For instance, one witness testified that he

---

[40] Wright's Br. at 15, 32 (internal citations omitted).

[41] *See Limones*, 8 F.3d at 1008.

[42] Wright's Br. at 15, 32.

[43] Wright's Br. at 30-31, 37.

[44] Wright's Reply Br. at 17-18; EN.286-87.

[45] *United States v. Piper*, 912 F.3d 847, 855 (5th Cir. 2019), *cert. denied*, 139 S. Ct. 1639 (2019) (citing *United States v. Reed*, 908 F.3d 102, 119 (5th Cir. 2018)); *see also* FED. R. EVID. 801(c).

[46] *Reed*, 908 F.3d at 120 (citations omitted).

[47] *See, e.g.*, EN.851-53; *see also* EN.250-60.

"recommend[ed] that Mr. Wright be terminated for unprofessional behavior" and, when asked for the basis of that recommendation, testified about specific complaints he received about Wright that led him to make that recommendation.[48]  The statements that Wright claims were inadmissible hearsay were not offered to prove the truth of their content but were offered for their effect on the listener, and are not hearsay.[49]

## IV

Wright's third argument on appeal is that the ALJ's conclusions lack substantial evidence.[50]  Wright contends that substantial evidence does not support the ALJ's conclusions that (1) Wright did not engage in protected activity meant to safeguard drinking water in accordance with SDWA, FWPCA, and relevant regulations, and (2) even if he did, the RRC terminated Wright's employment for reasons rather than in retaliation for engaging in protected activity.[51]

We first examine whether substantial evidence supports the ALJ's conclusion that the RRC terminated Wright's employment for reasons other than retaliation.[52]  The substantial evidence standard requires that a "decision must be upheld if, considering all the evidence, a reasonable person could have reached the same conclusion."[53]  Substantial evidence requires "more than a mere scintilla but less than a preponderance."[54]

---

[48] EN.851-54.

[49] *Reed*, 908 F.3d at 120 (citations omitted) ("Ordinarily, a statement is not hearsay if it is offered to prove the statement's effect on the listener."); *see also White v. Fox*, 470 F. App'x 214, 222 (5th Cir. 2012).

[50] Wright's Br. at 31, 37.

[51] Wright's Br. at 31, 37.

[52] *See Ameristar Airways, Inc. v. ARB, Dep't of Labor*, 771 F.3d 268, 272 (5th Cir. 2014) ("An agency's conclusions of law are reviewed de novo and its findings of fact are reviewed for substantial evidence." (citing *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 490 (5th Cir.2005))).

[53] *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004).

[54] *Id.* (internal quotations omitted) (quoting *Williams*, 376 F.3d at 476).

We conclude that the ALJ's decision is supported by substantial evidence. In his opinion, the ALJ points to the numerous instances of Wright's "interpersonal conflicts with other employees [and] operators" as well as his disregard for directions from his managers.[55] The ALJ cited several employment evaluations occurring over a span of years that document Wright's need to "strive for better relations" with colleagues and operators,[56] how difficult Wright was to work with,[57] and a continued failure on Wright's part to improve his behavior.[58] Witnesses testified about the numerous complaints against Wright by his colleagues and by operators, including "multiple incidents where [he] clashed with operators and behaved in a rude and threatening manner."[59] One witness recalled seeing Wright laugh at an operator and threaten additional violations when asking for his help,[60] and another witness said that Wright had engaged in name-calling, such as calling people "stupid" and "liars."[61] Another witness testified that Wright ignored the instructions of his manager, requesting an operator to complete outdated forms after Wright's manager had explicitly told Wright that the old form did not need to be completed and that a phone call about the missing information from the already-completed form would suffice, as discussed above.[62] Witnesses also testified that operators found Wright so difficult to work with that they would actively avoid having to speak with him.[63]

The main evidence that would support a conclusion that Wright was terminated for engaging in protected activity is that some acts Wright alleges

---

[55] EN.269-72.
[56] EN.271-72.
[57] EN.272.
[58] EN.272.
[59] EN.272.
[60] EN.260, 270, 785.
[61] EN.157, 258.
[62] EN.258.
[63] EN.260.

8

were protected happened in relatively close proximity to his termination.[64]  The ALJ declined to make the inference that this close temporal proximity was enough given the significant evidence that the RRC terminated Wright's employment solely because of behavioral issues.[65]  The evidence of behavioral issues, together with other documents and testimony from several witnesses about similar behavioral issues, sufficiently supports the ALJ's finding that Wright's employment with the RRC was terminated for behavioral issues and not because he engaged in protected activity.

Since we conclude that the ALJ's finding that Wright's employment was terminated for behavioral issues is supported by substantial evidence, we need not examine whether the ALJ's finding that Wright did not engage in protected activity is supported by substantial evidence.  Either would have been sufficient to reject Wright's claims.

## V

Wright's fourth argument on appeal is that the ALJ improperly rejected his motion for recusal, and Wright was therefore deprived of the right to have his case heard by an impartial arbiter.[66]  "We review a denial of a motion to recuse for abuse of discretion."[67]  An ALJ has abused his discretion when "a reasonable man, cognizant of the relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality."[68]  Although the Department of Labor contends that Wright failed to exhaust his administrative remedies regarding his motion for recusal by not

---

[64] EN.269-70.
[65] EN.269.
[66] Wright's Br. at 33-37.
[67] *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 80 (5th Cir. 2011) (citing *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir.2003)).
[68] *Id.* (alteration in original) (citing *Andrade*, 338 F.3d at 454).

raising them with the ARB,[69] the record shows that Wright did raise them before the ARB.[70]

In his brief to this court, Wright references eleven reasons why the ALJ should have recused himself and why the ALJ could not be impartial.[71] Wright's first argument is that there were technical issues with the record the ALJ forwarded to the ARB.[72]   But there is no allegation that the ALJ intentionally removed the missing documents from the record forwarded to the ARB.  Even Wright himself says the ALJ might have "unconsciously" created the technical errors in the record.[73]   The issue was also corrected before the ARB.[74]   Unintentional, technical errors do not represent prejudicial bias that would warrant recusal.[75]

Wright's second argument is that the ALJ should be recused because he requested the opposing party submit a response to Wright's motion for recusal.[76]  But simply requesting a response to a motion to recuse does not represent bias in the judge.[77]

Wright's third argument is that the ALJ rejected Wright's attempt to admit an exhibit that was already admitted by the opposing party.[78]  But the rejection of a duplicate exhibit is not indicative of bias because rejecting

---

[69] Department of Labor's Br. at 38-42.

[70] EN.244, 303; Wright's Reply Br. at 9-10.

[71] Wright's Br. at 33-37.

[72] Wright's Br. at 34-35.

[73] Wright's Br. at 35.

[74] Dep't of Labor's Br. at 42-43.

[75] *See Liteky v. United States*, 510 U.S. 540, 556 (1994) (noting that "routine trial administration efforts" are not a basis for prejudicial bias); *see also United States v. O'Keefe*, 169 F.3d 281, 287 n.5 (5th Cir. 1999).

[76] Wright's Br. at 34.

[77] *See Liteky*, 510 U.S. at 556 (noting that "routine trial administration efforts" are not a basis for prejudicial bias).

[78] Wright's Br. at 36.

duplicative exhibits is a prerogative of a judge to prevent confusion as well as the wasting of time and resources.[79]

Wright's fourth argument is that the ALJ admitted alleged hearsay during the hearing on Wright's case.[80] But this argument is not persuasive. As we concluded, Wright has not pointed to any actual hearsay that was admitted in the proceeding before the ALJ. Furthermore, even if the ALJ did admit hearsay and Wright did timely object to it, Wright has failed to show how the ALJ's evidentiary rulings are evidence of bias since "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[81]

Wright's fifth argument is that the ALJ was "reluctan[t] to go into the required detail" in the case because he only held a three-day hearing rather than a two-week hearing and because the ALJ said, in an off-hand remark, that he had no intention of becoming a petroleum engineer through the proceedings.[82] Insisting upon haste in judicial proceedings is generally not indicative of prejudicial bias.[83] Additionally, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."[84]

Wright's sixth argument is that the ALJ did not make it clear when he admitted a certain exhibit.[85] Unless a judge is intentionally trying to frustrate a party's case, not making clear when a certain exhibit has been admitted is

---

[79] *See* FED. R. EVID. 403.

[80] Wright's Br. at 37-38.

[81] *Liteky*, 510 U.S. at 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

[82] Wright's Br. at 35-36.

[83] *See Nicodemus v. Chrysler Corp.*, 596 F.2d 152, 156 (6th Cir. 1979).

[84] *Liteky*, 510 U.S. at 555; *see also Andrade v. Chojnacki*, 338 F.3d 448, 462 (5th Cir. 2003) ("'[E]xpressions of impatience, dissatisfaction, annoyance and even anger' do not establish bias or partiality." (quoting *Liteky*, 510 U.S. at 555-56)).

[85] EN.199-201.

not indicative of prejudicial bias. If Wright was uncertain whether the ALJ had admitted a certain exhibit, he should have asked the ALJ.

Wright's seventh argument for why the ALJ should have recused himself is that the ALJ did not compel the RRC to allow Wright access to a personnel file of a former colleague.[86] Wright does not explain how this reflects the ALJ was biased.[87] The mere act of denying a specific discovery request, without more, can almost never show that an ALJ was prejudicially biased.[88]

Wright's eighth argument is that the ALJ allegedly made factual conclusions unsupported by the evidence.[89] As we concluded, the ALJ's factual conclusions that were necessary to dispose of the case were supported by substantial evidence. But even if other conclusions made by the ALJ were not, that does not automatically render the ALJ unfairly biased against Wright, otherwise every mistaken conclusion would be evidence of bias.[90]

Wright's ninth argument is that the ALJ unfairly denied Wright a hearing on his FWPCA claims by limiting the only hearing solely to consideration of Wright's SWDA claims.[91] Wright contends this is evidenced by the Notice of Hearing and Pre-Hearing Order issued by the ALJ.[92] However, the notice and order does not contain such a limitation.[93] Moreover, Wright concedes that the ALJ referenced the FWPCA in his opinion, reflecting that the ALJ was considering Wright's FWPCA claims in the context of the hearing,

---

[86] EN.212-13.

[87] EN.212-13.

[88] *See Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966))).

[89] EN.209-10.

[90] *See Liteky v. United States*, 510 U.S. at 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (citing *Grinnell Corp.*, 384 U.S. at 583)).

[91] EN.200-01.

[92] EN.200.

[93] EN.003-005.

and that the ARB discussed Wright's FWPCA claims in some detail in its opinion.[94]  Wright has failed to show that the ALJ did not allow him to present his FWPCA claim.

Wright's tenth argument is that the ALJ allegedly allowed Wright to admit evidence only for actions after 2010 while allowing the RRC to admit evidence from before 2010.[95]  But Wright has failed to demonstrate that this actually occurred.  In the portion of the transcript Wright cites, the ALJ inquired about situations that caused a hostile work environment within the 30 days prior to Wright's complaint.[96]  The transcript does not show that the ALJ barred Wright from introducing evidence from prior to 2010.[97]

Wright's eleventh argument is that the ALJ refused to admit several of Wright's exhibits.[98]  Rulings on the admission of exhibits generally does not constitute prejudicial bias without some showing that the judge was acting antagonistically towards the party whose exhibit was rejected.[99]

Even considering all of Wright's arguments together, Wright has failed to show that the ALJ exhibited prejudicial bias against Wright.  The ALJ did not abuse his discretion in rejecting Wright's motion for recusal.

## VI

Lastly, Wright contends that this court must determine which of several differing transcripts is the correct version in order to resolve this appeal.[100]  We

---

[94] EN.201.

[95] EN.208-09; *see also*  EN.438-43.

[96] EN.438-43.

[97] EN.438-43.

[98] Wright's Br. at 32.

[99] *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966))).

[100] Wright's Br. at 16, 40 ("[I]t appears that a ruling on which Transcript, is the correct Transcript, is warranted.").

disagree. Wright does not allege which part of the transcript is not in the record before us.[101] Wright was not unfairly prejudiced by the existence of several different transcripts of his hearing before the ALJ, and thus we do not need to resolve which iteration of the transcript was the official version to resolve this appeal.

* * *

For the foregoing reasons, the judgment of the Administrative Review Board is AFFIRMED.

---

[101] *See generally* Wright's Br.