# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60781

United States Court of Appeals
Fifth Circuit

**FILED**
March 4, 2019

Lyle W. Cayce
Clerk

AVALON PLACE TRINITY,

      Petitioner,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

      Respondent.

Petition for Review of a Decision of the United States
Department of Health and Human Services,
Departmental Appeals Board
HHS No. A-16-108

Before ELROD, WILLETT, and DUNCAN, Circuit Judges.

PER CURIAM:*

      Avalon Place Trinity appeals a decision of the administrative review board for the Department of Health & Human Services affirming monetary penalties imposed for failing to follow patient safety regulations governing nursing homes. Because the decision is lawful and supported by substantial evidence, we AFFIRM.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60781

I.

Avalon Place Trinity ("Avalon") is a nursing home in Trinity, Texas.  In March 2013, the Texas Department of Aging and Disability Services ("DADS")[1] surveyed Avalon, a participant in the Medicare program, to determine if the facility was complying with myriad regulations under 42 C.F.R. Pt. 483.[2] Specifically focusing on the facility's treatment of two residents identified as R73 and R24, DADS cited Avalon for non-compliance with several regulations meant to protect patients against mistreatment and neglect.  The Centers for Medicare & Medicaid Services ("CMS") imposed a civil monetary penalty on Avalon totaling $81,650 for the non-compliance.

R73 was an 81-year-old man suffering from several health conditions including cerebrovascular disease and anemia.  He was admitted to Avalon on March 13, 2013, following a hospitalization for influenza.  The morning of March 28, a nurse aid left R73 alone in the bathroom.  When the nurse aid returned, she found R73 lying on the bathroom floor bleeding from the side of his head.  Avalon staff immediately called emergency services and transported R73 to an emergency room.  R73 died later that night from intercranial bleeding and a subdural hematoma.

R24 was a 93-year-old woman who was at high risk of falls.  Her interim care plan provided that she needed extensive staff assistance for personal hygiene, toileting, eating, and mobility.  R24 fell out of bed on March 25.  After this incident, Avalon staff placed an alarm on R24's bed and entered an

---

[1] DADS is now the Texas Health & Human Services Commission.

[2] The parties cite the 2013 version of the CFR.  There have been numerous changes to the organization of the CFR since 2013.  However, the substantive law has remained the same and neither party raises arguments based on changes to the regulations.  For consistency, where the CFR is cited in this opinion, the citation is to the 2013 version applicable at the time of the incidents underlying this case.

instruction into her care plan to reapply and test her fall alarms. However, Avalon staff did not ensure that her alarms were in place, and a surveyor observed R24 in the dining room in her wheelchair without a chair alarm on March 28.

Avalon requested a hearing with an Administrative Law Judge ("ALJ") at the Department of Health & Human Services ("HHS") to contest most of the citations. The ALJ found that CMS's determination that Avalon was in substantial non-compliance with these regulations was not clearly erroneous. She further found that the assessed fine of $81,650 was reasonable under the circumstances. Avalon appealed the ALJ's finding of violations for five of the regulations to HHS's Departmental Appeals Board ("DAB"). The DAB thoroughly examined the case and determined that the ALJ's findings were supported by substantial evidence on the record.

On appeal to this court, Avalon challenges the findings that it violated four of those regulations: 42 U.S.C. § 483.13(c), which requires facilities to develop and implement policies that guard against patient neglect; 42 U.S.C. §§ 483.20(g)–(j), which require accurate health assessments of residents; 42 U.S.C. § 483.25(h), which requires facilities to remain as free from accident hazards as possible and to properly supervise residents to prevent accidents; and 42 U.S.C. § 483.75, which states, "[a] facility must be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident."

The ALJ found that Avalon did not comply with these four regulations because its staff did not accurately assess its residents, did not prevent resident neglect, and did not provide vulnerable residents with the supervision and assistive devices needed to prevent accidents. Specifically, the ALJ found

that Avalon failed to follow its own anti-neglect policies, did not accurately assess R73 as a high fall risk, left R73 unsupervised, failed to properly address R24's fall risk, and was non-compliant in administration because it did not have in place a reliable method for conveying necessary treatment instructions to direct-care staff. On appeal to this court, Avalon argues that the ALJ's decision was not supported by substantial evidence.[3]

## II.

This court may only overturn an agency's finding of fact where the finding is "unsupported by substantial evidence," or "arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). This court defers to factual findings by the DAB and ALJ if the findings are supported by substantial evidence. 42 U.S.C. § 1320a-7a(e) ("The findings of the Secretary with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.").

Substantial evidence is defined as "more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris*

---

[3] Avalon also argues that the ALJ considered several pieces of evidence that would not be admissible in court, including Avalon's plan of correction and affidavits from CMS personnel who did not state under penalty of perjury that they had personal knowledge of facts alleged therein. However, as the DAB recognized, the ALJ was not bound by the same evidentiary rules as are courts. 42 C.F.R. § 498.61 ("Evidence may be received at the hearing even though inadmissible under the rules of evidence applicable to court procedure."). Avalon cites no authority to the contrary.

In addition, Avalon alleges that it was denied due process because the ALJ was unfairly biased against it. However, even if the ALJ was ill-disposed towards it, Avalon fails to demonstrate any extrajudicial source of alleged bias, and an ALJ's past rulings are not themselves sufficient to show bias. *See Andrade v. Chojnacki*, 338 F.3d 448 (5th Cir. 2003); *Liteky v. United States*, 510 U.S. 540 (1994).

No. 17-60781

*v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). A court should not "re-weigh the evidence or substitute [its] judgment" for that of the agency. *Id.* However, a court must still provide "meaningful review" and not simply rubber-stamp agency factfinding. *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999).

III.

There was substantial evidence for the DAB to determine that Avalon failed to implement proper procedures to guard against patient injury.

R73's transfer records stated that he needed assistance with all self-care including walking and toileting. While the fall-risk assessment performed on R73's admission did not indicate that he was at a high risk of falling, the ALJ found that this assessment had critical omissions and, if done accurately, would have indicated that R73 was at a high risk of falling. Moreover, a series of documents entitled "Daily Skilled Nurse's Note[s]" written between March 13 through March 27, and other record evidence, support the finding that Avalon's employees were aware of R73's unsteady gait, balance problems, weakness, and decreased movement in his lower extremities.

The record also supports the finding that Avalon knew, or should have known, that R73's condition was in decline. His wife asked to speak to the director of nursing about her husband's declining condition on March 26. This conversation resulted in Avalon staff making an appointment for R73 with his treating physician, Dr. Mandel.[4] The appointment was scheduled the day of R73's fall.

---

[4] Avalon claims that the ALJ improperly discounted a written statement by Dr. Mandel stating that, based on his observations the night before R73's fall, R73 was able to be left unattended in the bathroom. However, it was not error for the ALJ to give this statement less weight in her credibility determination because the statement was Dr. Mandel's recollection of seeing R73 in passing in the hallway. The record supports the conclusion that Dr. Mandel was at the facility for reasons unrelated to R73 and did not make his observations based on an actual examination of him.

Moreover, occupational therapist notes dated March 27 state that Avalon's staff was told that R73 "needs assistance at this time with all mobility," including toileting supervision. Avalon asserts that its nursing staff did not have access to the occupational therapist's notes until after R73's fatal fall. Avalon claims that the documents were falsified after the incident and then added to the file. However, the ALJ determined that the therapist's notes were likely not falsified and that the facility instead had no systematic means to incorporate the assessments into patient care plans in a timely manner. Factual disputes of this sort are better resolved by factfinders than by appellate courts. Furthermore, the regulations place the overall responsibility for patient care on the facility, even if the facility provides some of its services through independent contractors. 42 C.F.R. § 483.75(h). But even if the therapist's notes are excluded from consideration, there remains substantial evidence to support the ALJ's finding that Avalon's staff was, or should have been, on notice of R73's need for supervision when toileting, and that Avalon therefore breached its obligation to provide proper supervision when it left him alone on the morning of March 28.

The record also supports a finding that R73 was not the only resident whose safety was jeopardized by Avalon's lack of supervision. Despite being aware that R24 was at high risk of falls, Avalon failed to implement care plan instructions designed to prevent further harm, including failing to ensure that her fall alarms were in place.

In light of the fact that one resident suffered a fatal accident and at least one other resident remained exposed to a serious risk of injury, there was substantial evidence for the Secretary to determine that Avalon was

No. 17-60781

noncompliant with 42 U.S.C. §§ 483.13(c), 483.20(g)–(j), 483.25(h), and 483.75. Moreover, the assessed fine is reasonable.[5]

 The decision of the DAB is AFFIRMED.

---

[5] Avalon argues that the $81,650 fine was excessive. However, because substantial evidence supports the ALJ's findings, and given that each per-day penalty is roughly at the midpoint of the fine range provided under 42 C.F.R. § 488.438, we hold the fine to be reasonable.