# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-40483
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ISMAEL LECHUGA, also known as Junior 1, also known as Junior 5, also known as Junior 100,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:16-CR-876-2

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

PER CURIAM:[*]

Ismael Lechuga pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine and conspiracy to engage in money laundering. Shortly after his arrest, Lechuga began cooperating with the Government and was in line to receive credit for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and a motion by the Government for a reduced

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentence pursuant to U.S.S.G. § 5K1.1.  Before his scheduled sentencing, however, Lechuga, his brother, and his uncle were involved in warning law enforcement of a plan stemming from Mexico to kill the district court judge, Judge Randy Crane.  As a result, Judge Crane received two or three personal briefings from federal marshals regarding the purported threat and experienced inconvenience in his life that he described as "de minimus."

The investigation revealed that the threat appeared to be a hoax.  Judge Crane was informed of that development and was also told that Lechuga had taken a polygraph exam that showed he was being deceptive.  Lechuga then moved under 28 U.S.C. § 455(a) and (b)(1) for Judge Crane's recusal.  After hearing evidence on the matter, Judge Crane found that the threat was a hoax orchestrated by Lechuga to give the appearance of further assistance by him to the Government and to curry favor at sentencing.  Judge Crane denied the motion to recuse.

Based on Lechuga's involvement in the hoax, the Government decided not to file a § 5K1.1 motion and Judge Crane denied credit for acceptance of responsibility.  Lechuga moved under 18 U.S.C. § 3553(a) for a downward variance from his guidelines range of 360 months to life imprisonment, but Judge Crane denied the request and sentenced him to a total of 360 months of imprisonment and five years of supervised release.

Lechuga seeks resentencing on three grounds.  He first challenges the denial of his motion to recuse under § 455(a) and (b)(1).  The district court's denial of a motion to recuse is reviewed for abuse of discretion.  *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).  Under § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  § 455(a).  A judge abuses his discretion in denying a motion under § 455(a) if a reasonable person who is cognizant of the relevant

circumstances would harbor legitimate doubts about the judge's impartiality. *Andrade*, 338 F.3d at 454.

Section 455(b)(1) requires a judge to recuse himself where he "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1). Generally, to warrant recusal under § 455(b)(1), the judge's "bias or prejudice" or "personal knowledge of disputed evidentiary facts" must stem from an extrajudicial source. *See Andrade*, 338 F.3d at 455; *Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998). Recusal under § 455(a) likewise is generally limited to circumstances that arise from an extrajudicial source. *See Liteky v. United States*, 510 U.S. 540, 554 (1994); *Andrade*, 338 F.3d at 455.

While the presence or absence of an extrajudicial source is a significant factor, an extrajudicial source alone is neither a necessary nor sufficient condition for recusal. *Liteky*, 510 U.S. at 554-55. The rule concerning extrajudicial sources "more or less divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal." *Andrade*, 338 F.3d at 455 (footnote omitted) (citing *Liteky*, 510 U.S. at 555). "Non-extrajudicial facts 'do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Tejero v. Portfolio Recovery Assocs.*, 955 F.3d 453, 463 (5th Cir. 2020) (quoting *Liteky*, 510 U.S. at 555).

Lechuga contends that Judge Crane's personal briefings from federal marshals during the investigation were extrajudicial in nature. According to Lechuga, such information qualified as "personal knowledge of disputed evidentiary facts" under § 455(b)(1) and presented a basis for at least reasonably questioning Judge Crane's impartiality for purposes of § 455(a).

We conclude that Judge Crane's personal briefings were not extrajudicial. Those briefings and the information disclosed therein are comparable to the information and ex parte meetings in *United States v. Phillips*, 664 F.2d 971, 1000-04 (5th Cir. Unit B Dec. 28, 1981), *superseded by rule on other grounds as recognized in United States v. Huntress*, 956 F.2d 1309, 1314-17 (5th Cir. 1992), that were determined to be not extrajudicial. As in *Phillips*, Judge Crane's personal briefings were for a proper purpose and involved a threat to kill the judge. *See Phillips*, 664 F.2d at 1001, 1003-04. Additionally, Judge Crane was not an active participant in the investigation of the threat, as he merely received briefings on the investigation. *See id*.

Judge Crane also indicated in denying the motion to recuse that the two or three personal briefings he received were limited in detail and that the evidence later presented in court regarding the purported threat covered and exceeded the information provided in his personal briefings. Although Judge Crane's personal briefings included disclosure of Lechuga's polygraph results, Judge Crane did not consider the polygraph and granted the defense's motion to exclude the polygraph information.

Having determined that no extrajudicial source was involved, we turn to whether there was "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Judge Crane's behavior, comments, and rulings in this case do not meet that standard. *See id*. The fact that Judge Crane's personal safety was the subject of Lechuga's hoax also does not mandate recusal. *See Phillips*, 664 F.2d at 1001, 1004. A reasonable person who is cognizant of the relevant circumstances would not harbor legitimate doubts about Judge Crane's impartiality. *See Andrade*, 338 F.3d at 454. The denial of Lechuga's motion to recuse was not an abuse of discretion. *See id*.

No. 19-40483

Lechuga next challenges the denial of credit for acceptance of responsibility under § 3E1.1.  We apply a standard of review that is even more deferential than clear error.  *United States v. Puckett*, 505 F.3d 377, 387 (5th Cir. 2007).  The testimony of FBI Agent Joshua Swims adequately supported the district court's finding that the threat was a hoax for which Lechuga was responsible.  Because Lechuga failed to withdraw from criminal conduct, the district court did not err in denying credit for acceptance of responsibility.  *See id.*

In his final claim of error, Lechuga argues that the Government breached the plea agreement by advocating against credit for acceptance of responsibility and refusing to file a § 5K1.1 motion and that the Government breached a cooperation agreement by using his statements about the threat information to increase his guidelines range.  Because Lechuga did not raise these arguments in the district court, we review them only for plain error.  *See United States v. Cluff*, 857 F.3d 292, 297 (5th Cir. 2017); *United States v. Barnes*, 730 F.3d 456, 457 (5th Cir. 2013).

The Government's obligation under the plea agreement to recommend acceptance-of-responsibility credit was conditioned on Lechuga "clearly demonstrat[ing] acceptance of responsibility."  Lechuga failed to satisfy that condition, so the Government did not breach the plea agreement by not recommending the credit.  *See Cluff*, 857 F.3d at 299-300.

The Government also did not breach the plea agreement by refusing to file a § 5K1.1 motion, as the plea agreement does not contain any terms obligating the Government to file a § 5K1.1 motion.  *See United States v. Long*, 722 F.3d 257, 262-63 (5th Cir. 2013).  While Lechuga additionally contends that the Government's refusal was unconstitutional, he does not identify any constitutionally suspect reason for the Government's § 5K1.1 decision.  *See*

5

No. 19-40483

*Wade v. United States*, 504 U.S. 181, 186-87 (1992); *United States v. Urbani*, 967 F.2d 106, 109 (5th Cir. 1992). Thus, he has not shown that the Government relied on an unconstitutional motive. *See Wade*, 504 U.S. at 186-87; *Urbani*, 967 F.2d at 109. Lechuga's request to remand the case so that he can attempt to seek out additional information relating to the plea agreement is denied. *See McIntosh v. Partridge*, 540 F.3d 315, 327 (5th Cir. 2008).

Lastly, Lechuga's plea agreement contained no mention of a proffer or cooperation agreement, and the record does not contain any such agreement. Lechuga has the burden of proving that the underlying facts establish a breach. *See United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002). He has not shown that his statements regarding the hoax were protected by the terms of a proffer or cooperation agreement.

AFFIRMED.