# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 17, 2020

No. 18-20501

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, EX REL., RICHARD DRUMMOND,

      Plaintiff-Appellee,

UNITED STATES OF AMERICA,

      Intervenor-Appellee,

v.

BESTCARE LABORATORY SERVICES, L.L.C.; KARIM A. MAGHAREH,

      Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before ELROD, WILLETT, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

BestCare Laboratory Services, L.L.C., obtained millions of dollars in reimbursements from Medicare for miles that its technicians never traveled. In this False Claims Act suit against BestCare and its CEO, the district court granted summary judgment to the United States. We affirm.

I.

Karim A. Maghareh founded BestCare in 2002 and served as its CEO. BestCare provided clinical testing services for nursing-home residents, many of whom were Medicare beneficiaries. Its main laboratory was in Webster, Texas, a suburb of Houston. BestCare grew its business; it opened labs in

No. 18-20501

Dallas and San Antonio and specimen-processing centers in Waco, Austin, and El Paso. Maghareh owned 51% of the company, and his wife owned the other 49%.

Richard Drummond was one of Maghareh's competitors. Drummond was suspicious of Maghareh's success in expanding BestCare. After all, diagnostic testing for Medicare patients isn't high-margin work. *Cf.* 42 U.S.C. § 1395*l*(h)(3)(A) (providing only a "nominal fee" for specimen collection). In 2008, Martha Shirali left her job as BestCare's billing manager, and Drummond subsequently hired her. When Shirali described BestCare's billing practices for travel reimbursements to Drummond, he realized that BestCare had been improperly billing Medicare.

In 2008, Drummond brought a *qui tam* whistleblower suit under the False Claims Act against BestCare and Maghareh on behalf of the United States. Three years passed with no activity in the district court. In 2011, the United States exercised its right to intervene, *see* 31 U.S.C. § 3730(b)(4)(A), and brought claims for fraud, unjust enrichment, payment by mistake, and violations of the False Claims Act.

The Government alleged that BestCare submitted false claims for travel reimbursements to Medicare. Specifically, BestCare sought reimbursements for miles purportedly driven by technicians to collect specimens from patients—when the samples were actually shipped one-way via airplane without any technician onboard. In addition, BestCare often failed to prorate mileage, treating a single shipment of multiple samples as though each sample had been shipped separately.

The Government filed two partial motions for summary judgment. The first sought to hold BestCare and Maghareh liable for fraud, unjust enrichment, and payment by mistake. The Government limited its damages calculation to a modest subset of BestCare's fraudulent billings: those

2

No. 18-20501

purporting to involve trips of 400 miles or more between August 4, 2005, and January 26, 2010. The Government did so because it is undisputed that no technician traveled 400 miles or more to collect samples. The Government's expert calculated damages by estimating the non-reimbursable portion of what Medicare paid using a sampling methodology developed by the Office of the Inspector General. He estimated that the total excess payment to BestCare during the time period in question was $10,600,000 (+/– 1.34%). The Government sought a judgment in that amount.

The second partial motion for summary judgment sought to hold BestCare and Maghareh liable for violating the False Claims Act. In this motion, the Government limited its damages calculation to an even smaller subset of fraudulent billings: those purporting to involve trips of more than 400 miles between August 4, 2005, and June 30, 2008. The Government's expert found that the total amount paid by Medicare during this time period for trips involving more than 400 miles was $10,190,545. Unlike the previous damages calculation, no sampling was used to disaggregate the reimbursable and non-reimbursable portions of what Medicare paid. Because the False Claims Act permits treble damages, *see* 31 U.S.C. § 3729(a)(1), the Government sought damages of $30,571,635.

In 2014, the district court granted partial summary judgment to the Government. It ruled only on the Government's first summary-judgment motion and held Maghareh liable for unjust enrichment and payment by mistake. The court adopted the Government's damages calculation of $10,600,000 and held BestCare and Maghareh jointly and severally liable. BestCare and Maghareh sought reconsideration. The district court refused.

The Government's second partial summary-judgment motion, involving the False Claims Act, sat undecided in the district court for four years. We issued a writ of mandamus and ordered the court to rule on the motion. *See In*

No. 18-20501

*re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (per curiam). The court granted summary judgment to the Government, adopting its damages calculation of $30,571,635. It entered a final judgment in that amount on the same day.

BestCare and Maghareh timely appealed. We review *de novo* a district court's grant of summary judgment. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). We ask whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## II.

The defendants do not dispute that BestCare sought and obtained round-trip, driving mileage reimbursements for the one-way shipment of samples via airplane with no technician onboard. Instead, they argue that their billing practices were lawful. Alternatively, they argue that they didn't have the requisite *mens rea* because they thought it was lawful to bill the Government for technicians' road trips—when in fact there were no road trips, and the technicians stayed at home. We review and reject both arguments in turn.

## A.

The byzantine laws governing Medicare reimbursement have been aptly described as a "labyrinth." *Biloxi Reg'l Med. Ctr. v. Bowen*, 835 F.2d 345, 349 (D.C. Cir. 1987). Even the most complicated labyrinth has an outer boundary, however. And BestCare's machinations fell well outside of it.

Medicare allows laboratories to collect "a nominal fee to cover the appropriate costs in collecting the sample on which a clinical diagnostic laboratory test was performed," "except that not more than one such fee may be provided under this paragraph with respect to samples collected in the same encounter." 42 U.S.C. § 1395*l*(h)(3)(A). In addition, labs may collect:

4

a fee to cover the transportation and personnel expenses for trained personnel to travel to the location of an individual to collect the sample, except that such a fee may be provided only with respect to an individual who is homebound or an inpatient in an inpatient facility (other than a hospital).

*Id.* § 1395*l*(h)(3)(B).

The statutory text clearly forbids BestCare's billing practices. It is undisputed that BestCare billed for the shipment of samples via airplane when no technician was traveling. That violates the statute's limitation of travel reimbursements to "expenses for trained personnel to travel." *Ibid.* BestCare's indisputable violation of the statute makes this an open-and-shut case.

Defendants cannot avoid that result by pointing to the "sub-regulatory guidance" of the Medicare Claims Processing Manual ("CMS Manual"). Defendants insist that they complied with that manual, which they characterize as the "principal repository of sub-regulatory guidance on specific billing issues." Blue Br. 21. But the guidance the Defendants point to in the CMS Manual is a "policy statement" that has "no binding legal effect." *Clarian Health West, LLC v. Hargan*, 878 F.3d 346, 357 (D.C. Cir. 2017). Its instructions cannot legally justify a clear violation of a statute. The statutory text is what matters, and BestCare violated the statute's limitations on travel reimbursements.

B.

In the alternative, the defendants argue that their good-faith reliance on the CMS Manual creates a genuine fact dispute about whether they had the requisite mental state to violate the False Claims Act. *See* 31 U.S.C. § 3729(a)–(b) (requiring a defendant to act "knowingly," which includes not only "actual knowledge" of information, but also "deliberate ignorance" or "reckless disregard" of the truth or falsity of information, even when there is no "proof of specific intent to defraud"). This argument also fails because there is no

plausible reading of the CMS Manual that could support the defendants' billing practices.

We have said that when "state of mind is an essential element," "it is less fashionable to grant summary judgment." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991). But we have also recognized that the "presence of an intent issue does not automatically preclude summary judgment; the case must be evaluated like any other to determine whether a genuine issue of material fact exists." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996). In *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458 (5th Cir. 2009), we affirmed a grant of summary judgment to the Government under the False Claims Act, holding that the defendants "either purposefully, or with reckless disregard to the truth or falsity of their statements, misled" the Government. *Id.* at 471; *see also United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303–04 (6th Cir. 1998) (affirming grant of summary judgment to the Government under the False Claims Act).

The CMS Manual provides two billing codes for the collection of travel reimbursements. P9603 covers trips of twenty miles or more, and P9604 covers trips that are less than twenty miles. All of the claims at issue in this case deal with P9603. The defendants seek to justify their billing practices by pointing to two paragraphs discussing the P9603 billing code in Chapter 16, Section 60.2, of the CMS Manual:

- The minimum "per mile travel allowance" is $1.035. The per mile travel allowance is to be used in situations where the average trip to patients' homes is longer than 20 miles round trip, and is to be pro-rated in situations where specimens are drawn or picked up from non-Medicare patients in the same trip. - one way, in connection with medically necessary laboratory specimen collection drawn from homebound or nursing home bound patient;

prorated miles actually traveled (carrier allowance on per mile basis);[1] or

- The per mile allowance was computed using the Federal mileage rate plus an additional 45 cents a mile to cover the technician's time and travel costs. Contractors have the option of establishing a higher per mile rate in excess of the minimum (1.035 cents a mile in CY 2008) if local conditions warrant it. The minimum mileage rate will be reviewed and updated in conjunction with the clinical lab fee schedule as needed. At no time will the laboratory be allowed to bill for more miles than are reasonable or for miles not actually traveled by the laboratory technician.

The defendants note that only the second paragraph contains the language: "At no time will the laboratory be allowed to bill for more miles than are reasonable or for miles not actually traveled by the laboratory technician." They argue that the word "or" separating the first paragraph from the second makes it reasonable to read the two paragraphs as setting forth alternative situations in which P9603 can be used. They claim they were following the instructions in the first paragraph and ignoring the second. Therefore, the defendants say, they couldn't reasonably know it was unlawful to bill a "per mile travel allowance" for miles not traveled by anyone.

That argument borders on the absurd. Both paragraphs in the CMS Manual concern the rules governing per-mile reimbursements for technicians who're *actually* traveling somewhere. The first paragraph specifies a baseline per-mile rate for miles "actually traveled" by the technician. Alternatively, certain contractors can use a higher per-mile rate—but "[a]*t no time* will the laboratory be allowed to bill for more miles than are reasonable or for miles not actually traveled by the laboratory technician." (emphasis added). There is no way to read the Manual to suggest BestCare can bill Medicare for miles *not* actually traveled by anyone.

---

[1] All typographical errors in original.

No. 18-20501

This is confirmed by language preceding the two paragraphs cited by the defendants in Chapter 16, Section 60.2, of the CMS Manual. The defendants misleadingly omitted these two paragraphs from their trial-court exhibit:

> In addition to a specimen collection fee allowed under § 60.1, Medicare, under Part B, covers a specimen collection fee and travel allowance for a laboratory technician to draw a specimen from either a nursing home patient or homebound patient under § 1833(h)(3) of the Act and payment is made based on the clinical laboratory fee schedule. The travel allowance is intended to cover the estimated travel costs of collecting a specimen and to reflect the technician's salary and travel costs.
>
> The additional allowance can be made only where a specimen collection fee is also payable, i.e., no travel allowance is made where the technician merely performs a messenger service to pick up a specimen drawn by a physician or nursing home personnel. The travel allowance may not be paid to a physician unless the trip to the home, or to the nursing home was solely for the purpose of drawing a specimen. Otherwise travel costs are considered to be associated with the other purposes of the trip.

It is apparent from this passage that P9603 reimbursements are permitted only for miles that technicians actually travel to collect specimens from patients who are homebound or in nursing homes. Reimbursements are not allowed for the mere transportation of samples that have already been collected, even if a technician is traveling. They are certainly not allowed when samples are shipped with no technician traveling. And no reasonable person could possibly think that *round-trip* mileage reimbursements are permissible for the *one-way* shipment of samples, when no technician is traveling.

The defendants fare no better by invoking alleged conversations between BestCare employees and the Government's third-party administrators. Defendants say those conversations show they acted in good-faith reliance on the Government's representations, without knowledge that they were submitting false claims. Defendants further say they relied on statements from Trailblazer Health Enterprises (a contractor that handled BestCare's Medicare

No. 18-20501

reimbursements) and Medigain (a billing consultant that took over BestCare's billing in late 2008). But as the Government rightly notes, those conversations took place after June 30, 2008. So they could not have affected the defendants' submission of claims between August 4, 2005, and June 30, 2008, which is all that matters for the Government's summary-judgment motion involving the False Claims Act.

The conversations that pre-date June 30, 2008, are either irrelevant or support the grant of summary judgment to the Government. For example, the defendants cite a March 2007 letter purporting to summarize guidance from a Medicare representative. But it says nothing about whether BestCare could bill for technician travel when no technician traveled anywhere; it only commented on proration. The defendants argue that an auditor named TriCenturion did not kick BestCare out of Medicare. But TriCenturion's inaction before the *qui tam* relator's suit says nothing about whether the defendants knowingly submitted false claims. Finally, the defendants point to evidence they submitted to Medicare's Comprehensive Error Rate Testing ("CERT") office. But that evidence proves rather than undermines the Government's theory. In one letter to CERT, BestCare attached a MapQuest printout as evidence of "the mileage traveled to provide service to Ms. [redacted]." Of course, the real mileage traveled by a technician was *zero* because the defendants shipped the patient's specimen one way, by air, without a technician onboard.

The district court did not err in granting the Government's motions for summary judgment.

## III.

The defendants also argue that there are genuine disputes of material fact about the accuracy of the $10,600,000 damages calculation for the award involving unjust enrichment and payment by mistake. They do not clearly

9

No. 18-20501

challenge the calculation of the $30,571,635 False Claims Act award in their opening brief, so that argument is forfeited. *See Cantú v. Moody*, 933 F.3d 414, 418–19 (5th Cir. 2019). The defendants try to correct this forfeiture in their reply brief by asking us to construe their challenge to the first award as implicitly challenging the second award. But that is impossible because the two awards were calculated using different empirical methodologies, and they involve different legal standards. The only damages award before us is the first one, for $10.6 million.

We need not consider defendants' challenges to the $10.6 million judgment. That's because it is subsumed within the second judgment for $30.6 million under the False Claims Act. Both judgments arise from the same underlying conduct, so the Government is entitled to recover only once. *Cf. United States ex rel. Portland Constr. Co. v. Weiss Pollution Ctrl. Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976) (noting that "double recovery for a single wrong" is not permitted); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 20, 24 (D.D.C. 2007) (noting that it would be an "academic exercise" to consider liability on claims for unjust enrichment and payment by mistake after finding liability under the False Claims Act, because "any recovery under them would be duplicative"). Because we affirm the $30.6 million award under the False Claims Act, the defendants' challenge to the $10.6 million award is moot. *See Gil Ramirez Grp., L.L.C. v. Marshall*, 765 F. App'x 970, 974 (5th Cir. 2019), *cert. denied sub nom. Fort Bend Mech., Ltd. v. Gil Ramirez Grp., L.L.C.*, 140 S. Ct. 248 (2019) (mem.); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 341 (5th Cir. 2008).

## IV.

Maghareh argues that the district court erred in holding him personally liable for BestCare's improper billings. He first argues that the Government hasn't met the Texas-law standard for piercing the corporate veil. That

10

argument is plainly wrong, as state law has no relevance to the Government's federal claim under the False Claims Act, which allows Maghareh to be held personally liable. *See* 31 U.S.C. § 3729(a)(1) (holding liable "any person" who knowingly causes false claims to be presented).

Maghareh's second argument is that there are genuine disputes about whether he is personally responsible for BestCare's improper billings. We disagree. Maghareh signed the Medicare enrollment form, CMS 855B, in which he promised not to "submit claims with deliberate ignorance or reckless disregard of their truth or falsity." He signed every false P9603 claim that BestCare submitted, causing the Government to pay more than $10 million for miles that no technician traveled. And BestCare's billing manager Martha Shirali testified that Maghareh and his wife instructed her on how to bill for travel reimbursements. A supervisor's delegation of responsibility for claims submission to another person does not necessarily absolve the supervisor of liability under the False Claims Act. *See United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997).

Third, Maghareh argues he did not personally benefit from the fraud. But that would not matter even if it were true. To hold Maghareh jointly and severally liable under the False Claims Act, the Government need only prove he participated in a conspiracy to submit false claims. *See Mortgs., Inc. v. U.S. Dist. Court for the Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 212 (9th Cir. 1991) (holding that where "one or more persons have committed a fraud upon the government in violation of the [False Claims Act], each is jointly and severally liable"); *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1013 (5th Cir. 1972) (imposing joint and several liability). The Government met its burden. Therefore, the district court did not err in holding Maghareh jointly and severally liable.

No. 18-20501

V.

Finally, the defendants argue that the district judge should be required to recuse under 28 U.S.C. § 455 because he is not impartial. That argument was not raised in the district court, so it is forfeited. *See Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003) ("Requests for recusal raised for the first time on appeal are generally rejected as untimely."). In any event, the defendants' perfunctory, two-sentence argument cites no evidence and is meritless.

\* \* \*

BestCare and Maghareh spent years submitting false claims to the Government. Now they must pay. The district court's judgment is AFFIRMED.