# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 5, 2023

Lyle W. Cayce
Clerk

No. 22-30779

———————

Kirk Prest,

*Plaintiff—Appellant*,

*versus*

BP Exploration & Production, Incorporated; BP America Production Company; BP, P.L.C.,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:10-MD-2179, 2:17-CV-3409

———————————————————

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

Per Curiam:[*]

The district court excluded the causation opinions of Kirk Prest's medical experts and granted summary judgment in favor of Defendants (collectively, BP). Because Prest's medical experts failed to show general causation, we affirm.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30779

## I.

This is a toxic tort case arising from Prest's exposure to crude oil and dispersants while assisting with cleanup of the *Deepwater Horizon* oil spill. Prior to the disaster, Prest operated a fishing and hunting charter business near Venice, Louisiana.[1]   The oil spill "decimated" Prest's business. Consequently, he chartered his boat to BP and agreed to help with the cleanup.  From May 3 to October 30, 2010,[2] Prest performed a variety of tasks for BP, including wildlife search and rescue, oil search and reporting, and monitoring bird scare cannons.  During that time, Prest was continuously exposed to crude oil and dispersants in the water and the air.  In one specific incident, an aircraft sprayed Prest and his crew with dispersant.  They immediately started coughing and gasping for air and experienced a burning sensation in their eyes and sinuses.  Prest did not seek medical attention after the incident, however.

Before the oil spill, Prest had "perfect 20/20 vision" and had not experienced any problems with his eyes.  However, in September 2010, Prest began experiencing headaches and blurred vision.  His ophthalmologist, Dr. Robert Ross, advised him to stop working on the cleanup effort.  Prest took Ross's advice and stopped performing cleanup work on October 30.  Shortly

---

[1] We review a summary judgment de novo, construing "all facts and inferences in the light most favorable to the nonmoving party . . . ." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).  Accordingly, the facts are primarily drawn from Prest's complaint and his responses in opposition to BP's motions.

[2] The district court stated that Prest performed clean-up work from May 16 to November 26, 2010.  Because the dates are immaterial to Prest's claims, we use the dates from Prest's complaint and brief.

No. 22-30779

thereafter, Ross diagnosed Prest with Central Serous Retinopathy (CSR).[3] Since then, Prest's condition has progressively worsened.

In 2021 and 2022 Prest began experiencing memory problems, blurred vision, and increased ocular pain. He returned to Dr. Ross, who determined Prest's issues extended beyond his CSR diagnosis. In spring 2022, Prest visited Dr. Tere Vives, a specialist in neuro-ophthalmology. She noted that Prest had recently been suffering from a progressive loss of eyesight, ocular pain, and mild optic nerve swelling, and she determined he might need surgery to remove a cyst in his sinuses. She also testified that she could not determine whether his current conditions were caused by his cleanup work until his condition stabilized.

In 2017, Prest filed this lawsuit against BP.[4] He alleged his exposure to crude oil and dispersants during the cleanup effort caused his CSR, as well as other long term health issues. Additionally, he alleged he suffered "temporary injuries" and emotional distress when he was sprayed with dispersant. Prest designated Dr. Ross and Dr. Jerald Cook to testify as to causation in support of his exposure claim.

BP moved to exclude Dr. Ross's and Dr. Cook's causation opinions and then moved for summary judgment. The district court granted the motions. It found that Ross and Cook failed to establish general causation, and BP was thus entitled to summary judgment as to Prest's exposure claim.

_____

[3] CSR occurs when fluid builds up behind the retina. This can cause the retina to detach, leading to vision loss. *See* Cleveland Clinic, *Central Serous Retinopathy*, my.clevelandclinic.org/health/diseases/24335-central-serous-retinopathy, (last visited October 4, 2023).

[4] Prest originally filed a "Short Form Joinder" in 2011 to join the multi-district litigation arising from the oil spill. In 2017, the presiding judge ordered the plaintiffs who had not settled to file individual lawsuits. After consolidated discovery, the presiding judge severed the cases, and Prest's case was assigned to Judge Barry Ashe.

Additionally, it found that BP was entitled to summary judgment as to Prest's emotional distress claim because he was not within a "zone of danger" while he was performing cleanup work.  Prest timely appealed.

## II.

We review a district court's exclusion of expert testimony for abuse of discretion and "do not disturb the court's decision unless it is 'manifestly erroneous.'"  *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 748 (5th Cir. 2018) (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 369 (5th Cir. 2016)).  We review a summary judgment *de novo*, applying the same legal standards as the district court.  *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "We construe all facts and inferences in the light most favorable to the nonmov[ant] . . . ."  *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).  "We may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court."  *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 430 (5th Cir. 2022).

We first address Prest's exposure claim and then his emotional distress claim.

## A.

Our caselaw requires a plaintiff to show both general and specific causation in toxic tort cases.  *See, e.g.*, *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).  "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."  *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468–69 (5th Cir.

2012) (quoting *Knight*, 482 F.3d at 351). "Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence." *Knight*, 482 F.3d at 351. A plaintiff must show "[s]cientific knowledge of the harmful level of exposure to a chemical" to satisfy general causation. *Allen v. Pa. Eng'r Corp.*, 102 F.3d 194, 199 (5th Cir. 1996). Because neither Dr. Cook nor Dr. Ross satisfied the general causation requirement, the district court did not abuse its discretion by excluding their testimony.

Prest does not contest that Cook and Ross failed to offer scientific evidence of the level of exposure to crude oil or dispersant that would cause CSR—or any of his other medical conditions—in the general population. Rather, he contends the district court erred "when it mechanically applied the Fifth Circuit's toxic tort jurisprudence." He asserts the district court should have applied—and we should apply on appeal—a different standard based on the "unique circumstances" of the BP oil spill. Prest's arguments fail for two reasons.

First, a district court does not abuse its discretion when it properly analyzes the law and applies it to the facts of the case. *See Thomas v. Hughes*, 27 F.4th 363, 367 (5th Cir. 2022) (quoting *Maiz v. Virani*, 311 F.3d 334, 338 (5th Cir. 2002)). Prest does not cite any toxic tort cases where we have not required the plaintiff to show the harmful level of exposure to a chemical in the general population.[5] Accordingly, the district court would have erred if it had *not* applied our toxic tort precedent and instead created a new standard.

_____

[5] Prest offers *Mcgill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020); *Clark v. Kellogg Brown & Root L.L.C.*, 414 F. App'x 623, 627 (5th Cir. 2011); and *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999), to argue that we have stated "it is not necessary for an expert to establish the precise level of exposure." But those cases discuss *specific* causation.

No. 22-30779

*See Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) ("A district court abuses its discretion if it bases its decision on an erroneous view of the law . . . .").

Second, Prest's arguments are based on a flawed understanding of the general causation requirement. The crux of Prest's argument is that BP's failure to conduct biomonitoring of oil spill workers and preserve data "ma[de] it impossible" for Prest "to reliably recreate dosage levels" or otherwise quantify his exposure to the chemicals that caused his alleged injuries. But Prest puts the cart before the horse. BP's alleged failure to conduct biomonitoring and preserve data has no bearing on general causation. Rather, "[e]xposure data collected (or not) from the incident almost always bears on *specific* causation. It does not bear on whether, per the scientific literature, exposure to a chemical can cause a specific injury in the *general population*." *Byrd v. BP Expl. & Prod., Inc.*, No. 22-30654, 2023 WL 4046280, at *2 (5th Cir. June 16, 2023).[6] Thus, "even assuming that BP had an affirmative duty to [conduct biomonitoring or preserve data] after the oil spill, the lack of this information is not what renders Dr. Cook's [and Dr. Ross's] expert report[s] unreliable, unhelpful, and inadmissible." *Id.* In other words, even if Cook and Ross had quantified Prest's exposure to the chemicals that allegedly caused his injuries, their expert testimony would still fail to satisfy general causation. *See Johnson*, 685 F.3d at 468–69 (finding no abuse of discretion in excluding an expert witness's causation opinion when the expert provided a differential diagnosis without satisfying general causation requirement). Accordingly, the district court did not abuse its discretion in excluding their opinions.

_____

[6] Although unpublished opinions are non-precedential, we cite them as persuasive. *Byrd* is particularly relevant because it involves a similarly situated plaintiff, the same defendant, and one of the same expert witnesses—Dr. Cook.

And without Dr. Cook's and Dr. Ross's testimony, Prest cannot establish causation for his chemical exposure claims. *See Allen*, 102 F.3d at 199 (requiring not just knowledge, but *scientific* knowledge). Accordingly, the district court did not err in granting summary judgment for BP as to Prest's exposure claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## B.

Prest also contends the district court erred in dismissing his "temporary injury" and emotional distress claims based on his being sprayed with dispersant. He reasons that expert testimony is not required for those claims. But he cites no authority to support his argument that expert testimony is not required for his temporary injuries. Instead, he only references his opposition to BP's motion for summary judgment. A party cannot simply point to a district court filing to support an argument on appeal. *See* FED. R. APP. P. 28(a)(4). "Our court has resoundingly rejected such a tactic." *E.R. by E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 763 (5th Cir. 2018) (citing *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993)). Accordingly, Prest waived any argument that expert testimony is not required to substantiate temporary injuries. *See id.*; *see also United States v. Fernandez*, 48 F.4th 405, 412 (5th Cir. 2022) ("[F]ailure adequately to brief an issue on appeal constitutes waiver of that argument.").

As for his emotional distress claim, Prest contends the district court erred by finding that he was not in a zone of danger. As a threshold matter, "[w]e have 'repeatedly declined to adopt or preclude the zone-of-danger theory' for general maritime law." *SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 476 (5th Cir. 2022). Assuming *arguendo* that plaintiffs can recover under such a theory, Prest's claim nonetheless fails.

To recover under a zone of danger theory, a plaintiff's emotional injuries must be "a reasonably foreseeable consequence of the defendant's alleged negligence." *Id*. Prest avers that he has "constantly [had] flashbacks and nightmares from all [he] [has] endured . . . whether it's [his] mental or physical health, [his] family/friends enjoyment (or lack thereof), the estuary, [their] business, or the future that [their] one-and-only son would have had if not for BP. It has forever changed [Prest] both mentally and physically." He also states more broadly that "he has . . . suffered substantial mental pain and suffering and loss of enjoyment of life related to the Oil Spill." We do not question the seriousness of Prest's alleged emotional injuries, but, by his own testimony, they are not a foreseeable consequence of being sprayed with dispersant by the airplane. Rather, they pertain to the BP oil spill generally. Prest does not articulate any emotional injuries related directly to being sprayed with dispersant. Accordingly, Prest's emotional distress claims not only fail under a zone of danger theory, but "under any known theory of recovery—even the most liberal." *See Plaisance v. Texaco, Inc.*, 966 F.2d 166, 168 (5th Cir. 1992).

## III.

Prest also challenges the district court's order denying his motion to amend the scheduling order and continue trial. He asserts there was good cause to continue the trial based on Dr. Vives's testimony that she could not determine if Prest's recent medical issues were the result of his oil spill work until those conditions stabilized. *Id.*

District courts have broad discretion in enforcing the deadlines in their scheduling orders. *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020). "We will not lightly disturb a court's enforcement of those deadlines." *Id.* (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)). We consider several factors to determine whether a district court abused its

discretion to exclude evidence as a means of enforcing its scheduling order: "(1) the explanation for the failure to . . . [comply with the scheduling order]; (2) the importance of the [evidence]; (3) potential prejudice in allowing the [evidence]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015)).

All four factors weigh against Prest, but we focus on the importance of Dr. Vives's evidence. Vives's potential testimony is less important because it relates to specific causation—and thus does not remedy Prest's inability otherwise to show general causation. Vives does not purport to have evidence that exposure to crude oil or dispersants causes neurological issues in the general population. Thus, even if she testified that there was a connection between Prest's recent medical issues and his oil spill work, summary judgment would still be appropriate. Consequently, the district court did not abuse its discretion in denying Prest's motion for a continuance.[7]

## IV.

For the reasons stated, the judgment of the district court is

AFFIRMED.

---

[7] Prest also argues for the first time on appeal that the district judge erred by refusing to recuse. "That argument was not raised in the district court, so it is forfeited." *U.S. ex rel. Drummond v. BestCare Lab'y Servs., L.L.C.*, 950 F.3d 277, 285 (5th Cir. 2020) (citing *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003)).